## SUPREME COURT.

The People *ex rel.* Samuel H. Kniffin and Samuel H. Kniffin agt. Stephen Tabor.

Under the statute, *(Laws of* 1847, § 1,) the electors of a town, at an annual town meeting, have authority by a resolution to determine to return to, or have but one *commissioner of highways* for the town, instead of three, after the terms of those in office shall have expired. And the vote of the electors on such a resolution is not invalid or irregular, because,

1st. The resolution was put to vote and adopted by the electors after the town meeting had been opened, and the *balloting had progressed for some time, and votes had been cast for an individual as a commissioner of highways,* but before the poll was closed.

2d. Because, the resolution was put to vote and adopted from the *piazza of the hotel, to the voters outside,* while the meeting and balloting was held inside the hotel. And

3d. Because the *clerk* of the board, under the directions of the presiding officers of the board put the vote, and declared it carried, instead of a presiding officer.

*Ulster Circuit, February* 5, 1861. *Trial by the court.*

THE action was to try the title of the defendant to the office of commissioner of highways of the town of Marlborough, in the county of Ulster.

The evidence establishes the following facts : Prior to the first March, 1857, the electors of the town of Marlborough, determined by resolution at their annual town meeting, that there should be three commissioners of highways in said town. In 1857, at the annual town meeting, one Malcom was duly elected a commissioner. At the town meeting in 1858 Jesse Lyon was duly elected a commissioner; and at the town meeting in 1859 the plaintiff, Samuel II. Kniffin was duly elected a commissioner. Each and every of these persons qualified and acted as such commissioners. The term of office of Malcom expired on the 6th March, 1860; that of Lyon will expire in March, 1861; and of the plaintiff Kniffin, in March, 1862.

On the 6th March, 1860, an annual town meeting was being held in said town of Marlborough, at the house of one George E. Hulse ; Isaac Staples, F. S. Webster and Thomas Bingham, justices of the town, presided. The meeting opened about nine o'clock in the forenoon. Between two and three o'clock in the afternoon, and when over 200 electors were present, the following resolution was moved, seconded and carried, viz:

" *Resolved,* That there be but one commissioner of highways in the town of Marlborough, after the present commissioners' terms of office shall have expired."

This resolution was duly entered in the minutes of the town meeting, and certified by the presiding officers.

The balloting was progressing in an upper room of the hotel. The resolution was drawn up, there being a crowd

around, and by direction of the board, the clerk proceeded to the piazza of the hotel, (the place where other resolutions were moved,) to submit it to the electors.    It was talked of publicly, that the resolution was to be put, and when the clerk left the room with that view, a crowd followed him out, only some twenty persons remaining in the room.    Most of the persons attending the town meeting, were on the outside when the clerk put the resolution to vote, and amongst them was Bingham one of the presiding justices.    Either the clerk or Bingham declared that the resolution was carried ; and no elector questioned the fact of its being carried.

At the town meeting certain votes were cast for the defendant Stephen Tabor, for the office of commissioner of highways ; and assuming to have been elected, he filed the proper bond, and entered upon the duties of the office.    He is now acting as one of the commissioners of highways of the town of Marlborough.

The complaint charges that the pretended election of the defendant to the said office was void and of no effect, and that he is not entitled to exercise or perform the duties or functions of said office.

Judgment is demanded that the defendant be adjudged not to be entitled to hold or exercise the said office, and to have usurped and intruded into the same, and to be prohibited and enjoined by the court from exercising or attempting to exercise any of the duties or powers appertaining to the said office.

E. A. Brewster and E. Cooke, *for plaintiff.*
Fullerton & Van Wyck and J. T. Barnard, *for def't.*

Wright, Justice.    The electors of a town are empowered by law, at their annual town meeting to determine by resolution whether there shall be chosen one or three commissioners of highways.    (*Laws of* 1847, *ch.* 455, § 1.)    Prior

to 1857, it had been legally determined to have three commissioners in the town of Marlborough. These had been classed, so that an election for one commissioner annually occurred. There were three commissioners on the 6th March, 1860, the term of office of one of them expiring on that day. It is further provided by law, that " whenever any town shall have determined upon having three commissioners, and shall desire to return to or have but one, such town shall have the power to do so by a resolution taken at an annual town meeting, and when such resolution shall have been adopted, no other commissioner shall be elected or appointed until the term or terms of those in office at the time of adopting said resolution shall expire or become vacant; and they shall have power to act until their terms shall severally become vacant or expire, as fully as if the three continued in office." (*Laws of* 1847, *ch.* 455, § 1.) Thus the electors of a town in which three commissioners have been chosen, have the authority by resolution at an annual town meeting to return to and have but one commissioner; and if such resolution be duly taken and adopted, there can be no valid election or appointment of a commissioner until the term or terms of the commissioners then in office shall expire or become vacant.

The defendant claims to have been elected to the office of commissioner of highways, at the annual town meeting, on the 6th March, 1860, and to be lawfully entitled to exercise or perform the duties or functions of the office. There were at that time two commissioners in office, one of whose terms expired in March, 1861, and the other in March, 1862. If, at the town meeting held on the 6th March, 1860, the resolution of the electors to return to one commissioner was adopted according to the form and requirements of the statute, the pretended election of the defendant would be void and of no effect. The defendant's title, therefore, to the office depends wholly upon the question whether the electors regularly and legally exercised the power conferred

on them by law. If they did not, the defendant having received a majority of the votes cast, his election was a valid one, and he would be entitled to exercise the functions of the office. If they did, there could be no valid election of a commissioner, until the term of those in office had expired.

The minutes of the proceedings of the town meeting of the 6th March, 1860, subscribed by the clerk of such meeting and by the officers presiding, and filed in the office of the town clerk as required by law, show the adoption of a resolution by the electors at such meeting, to have but one commissioner of highways in the town after the terms of those in office shall have expired. In addition, the town clerk testifies that the resolution was read to the electors and the motion put by him by the direction of the board, from the piazza of the hotel, where the meeting was being held, and where the electors generally assembled; the result was made known, and signed by the board; and he kept the minutes of the proceedings of the meeting, and entered the resolution in the town book. It is not controverted that the resolution was submitted to and voted on by the electors, or that it was carried in the affirmative, but the allegation is, that it was not put at the right time, or in the right place, or by the right person, and hence was entirely without force or effect. . I propose briefly to examine this position.

· 1st. *As to the time.* The law requires the resolution to be taken at an annual town meeting. This was done. But the resolution was adopted after the meeting had been opened, and the balloting had progressed for some time for town officers. This would not, however, invalidate the act of the electors, unless the statute in plain terms directed that such action should be had before the balloting began. There is no such direction in the statute, nor do I think it is to be necessarily implied from any of the provisions relating to town meetings or the power of the electors thereat.

People *ex rel.* Kniffin agt. Tabor.

It is but a part of the business of a town meeting to ballot for certain town officers. The law confers upon the electors of a town thus assembled a variety of powers independent of that of voting by ballot for a certain class of officers; and it contemplates that the electors, or persons composing the meeting, shall remain in attendance until its close. There are no statute regulations in respect to the order of doing business; and, practically, we know, that most of it is done after the balloting has commenced. I entertain no doubt of the right of the electors to adopt a resolution to return to one commissioner of highways, at any time before the meeting and poll closes. No election has taken place until the poll has closed; and it is quite competent before that event occurs for the electors to resolve to dispense with more than one commissioner of highways in the town. Undoubtedly, it would have been more orderly to have moved the resolution before the voting commenced; but it was not invalid, for the reason that it was done at a subsequent stage of the meeting.

2. *As to the place where the resolution was moved.* The town meeting was being held at the house of one George E. Hulse. The ballots were taken in an upper room, whilst the resolutions were moved from the piazza of the hotel. The resolution was discussed and drawn up in the room where the balloting was progressing, and the crowd in the room proceeded with the clerk to the piazza where the main body of the electors were. The resolution was put, and declared to be carried, no one challenging the count or demanding a division. It is now urged that there was no town meeting being held at the place when the resolution was moved; the meeting being inside of the building, whilst the motion was made on the outside. The refutation of a position so untenable is scarcely required. The electors had assembled and were holding a town meeting at the house of Hulse. The meeting had not been appointed to be held in any particular room of the house. It is true that

the balloting was going on in an upper room, and two of the presiding officers were there. The resolution was discussed and drawn up in their presence and they directed the clerk to proceed to the piazza (where all other resolutions were moved,) and put the motion to the electors. This direction was equivalent to putting the motion themselves. Besides, one of the presiding officers was present, and, one of the witnesses thinks, declared the resolution to be carried. Under these circumstances, it is absurd to claim that no town meeting was being held where the resolution was adopted.

3. *As to the person putting the motion, and the declaration of the result.* The town clerk submitted the resolution to a vote of the electors, by and under the direction of the presiding officers of the meeting. In this, there was no such irregularity, as to vitiate the act. The presiding officers are undoubtedly the proper persons to submit any question arising at a town meeting to a vote of the electors, as they are charged with the duty of ascertaining and declaring the result of the vote. There is a substantial compliance with this requirement when the question is submitted by the clerk by the order and under the direction of the presiding officers. It cannot be necessary that all motions made at a town meeting should be actually put by the presiding officers or one of them; and that they should personally declare the result of the vote at the time it is taken. The clerk by their direction, may act as spokesman. The question is determined by a majority of the electors voting; and when the clerk or spokesman announces the motion to have been carried, and no elector calls for a division or moves a reconsideration, and the result is entered on the minutes of the proceedings of the town meeting which are subsequently subscribed by the presiding officers, such officers have ascertained and declared the result of the vote within the meaning of the statute. (1 *R. S., 5th ed.*, 820, § 29.)

People *ex rel.* Kniffin agt. Tabor.

Upon the whole, therefore, I am of the opinion, that the power conferred on the electors of the town to determine whether they would return to one commissioner of highways was legally exercised. It is not pretended that the resolution to return to one commissioner was not carried by the votes of a majority of the electors; nor that the question was not fairly and understandingly submitted to the meeting; but the grounds assumed are of the most formal, technical and unsubstantial nature, and in my judgment insufficient to invalidate the resolution. The electors of the town, in the mode prescribed by law, having determined to return to one commissioner, no commissioner could legally be elected at the town meeting of the 6th March, 1860, nor until the terms of the two commissioners then in office had expired. The defendant's title to the office of commissioner rests wholly upon the validity of the election of March, 1860. The resolution being adopted there could be no valid election. Determining to return to one commissioner, the law expressly declared that no other commissioner should be elected or appointed until the terms of the commissioners then in office should expire or become vacant. The votes cast for the defendant were, therefore, void and of no effect. He has no valid title to the office, or any lawful right to exercise its functions.

There must be judgment that the defendant is guilty of intruding into and unlawfully holding and exercising the office of commissioner of highways of the town of Marlborough, in the county of Ulster; and that he be excluded from such office; and, also, that the plaintiffs recover costs against him.